**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MP2 ENERGY LLC d/b/a SHELL ENERGY SOLUTIONS, | § § § | |
| *Plaintiff,* | § § § § | |
| v. | § § | Civil Action No. 24-cv-2347 |
| DOWNUNDER GEOSOLUTIONS (AMERICA), LLC, | § § § § | |
| *Defendant.* | § § § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**[1]

Plaintiff, MP2 Energy LLC d/b/a Shell Energy Solutions ("Plaintiff" or "MP2"), files this First Amended Complaint against Defendant DownUnder GeoSolutions (America), LLC ("Defendant" or "DUG") and respectfully alleges as follows:

**INTRODUCTION**

1. This action arises under an Energy Management Services Agreement (the "Services Agreement") between MP2 and DUG, entered in February

---

[1] This lawsuit was originally filed in the 164th Harris County District Court (Cause No. 2024-32616) on May 22, 2024, and removed by Defendant on June 24, 2024. This Amended Complaint serves to amend the original state court petition.

2019. Under the terms of the Services Agreement, DUG was obligated as a Load Resource ("LR") to provide electricity or ancillary services ("LR Capacity") into the Electric Reliability Council of Texas, Inc. ("ERCOT") market when called upon by ERCOT. In exchange, MP2, a Qualified Scheduling Entity ("QSE") was authorized to communicate ERCOT's instructions to DUG, agreed to pay DUG a fixed fee for serving as an LR and for remaining available to provide electricity or ancillary services into the market when called upon by ERCOT.

2. In February 2021 during Winter Storm Uri, ERCOT issued a directive to MP2 to instruct DUG to curtail its load. MP2 promptly notified DUG, triggering DUG's obligation to reduce its load pursuant to the terms of the Services Agreement. DUG followed ERCOT's instructions to reduce its load but was unable to fulfill its obligation to restore its load when ERCOT issued additional recall instructions. Because DUG failed to timely restore its load, MP2 was forced to buy replacement LR Capacity from the ERCOT marketplace to cover DUG's obligation to MP2 and as a participant in the LR program. DUG has refused to reimburse MP2 for the amounts MP2 incurred to purchase replacement LR Capacity, an amount of over $2.4 million.

3. This lawsuit seeks to hold DUG responsible for its breach of the Services Agreement and to recover the amount lawfully due to MP2.

## PARTIES

4. Plaintiff, MP2 Energy LLC d/b/a Shell Energy Solutions, is a Texas limited liability company with its principal place of business in Houston, Texas. MP2 is wholly owned by Shell Energy North America (US), L.P., which is organized and existing under the laws of the state of Delaware. Shell Energy North America (US), L.P. is owned by Tejas Coral GP, LLC, Tejas Coral Holding, LLC, Shell (US) Gas & Power M&T Holdings, Inc., and BG Energy Merchants, LLC, all of which are organized or incorporated and existing under the laws of the state of Delaware. *See* Dkt. No. 4, MP2's Corporate Disclosure Statement.

5. Defendant, DownUnder GeoSolutions (America), LLC is a limited liability company whose sole member is DUG (UK), a proprietary limited company formed and incorporated under the laws of Australia, with its principal place of business in Australia. *See* Dkt. No. 2, DUG's Rule 7.1 Disclosure Statement. DUG invoked this Court's diversity jurisdiction, and has appeared and answered in this case. *See* Dkt. No. 1, DUG's Notice of Removal.

## JURISDICTION AND VENUE

6.  The foregoing allegations are incorporated herein by reference.

7.  The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest and costs, and complete diversity of citizenship exists.

8.  Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events and omissions giving rise to the claims at issue occurred within this District.

## FACTUAL BACKGROUND

9. ERCOT uses "ancillary services" to ensure sufficient electricity is available and to balance the Texas electricity grid. "Responsive Reserve Service" ("RRS") is a type of ancillary service relevant to this dispute. RRS provides daily operating reserves of electricity to ERCOT to maintain system frequency.

10. As part of its role as a QSE, MP2 is authorized to deliver RRS to ERCOT. In some instances, MP2 contracts for RRS from customers who agree to change their electricity consumption pursuant to an ERCOT instruction as circumstances require. This type of program is called a Demand Side Management ("DSM") program.

11. Customers capable of changing their electricity consumption in response to an ERCOT instruction, including LRs such as DUG, may provide RRS in the ERCOT markets through a DSM program by changing their electricity consumption when instructed to do so, or automatically during certain system events. For a customer to change its consumption, it powers up or powers down as instructed.

12. DUG is one of MP2's customers who participated in a DSM program and contracted its electricity capacity to MP2 at a fixed quantity and price. Customers who contract their LR Capacity at a fixed quantity per day are required to be able to operate at that fixed amount, such that if they reduce their electricity consumption, they can contribute that contracted-for amount to the power grid. ERCOT requires LRs who have reduced their load to be able restore their load within three hours of an instruction to do so. The ability to reduce and restore load within a certain time is a qualification requirement imposed by ERCOT, and the Services Agreement required DUG to comply with ERCOT regulations and protocols.

13. MP2 and DUG entered into the Services Agreement with an accompanying Transaction Confirmation and amended Transaction Confirmation in 2019. Pursuant to the terms of the Services Agreement,

DUG agreed to provide, and MP2 agreed to pay, a fixed price for the first two megawatts ("MW") of DUG's LR Capacity, with the option for DUG to provide up to five MW of LR Capacity. DUG agreed to the pricing structure and terms shown in the Services Agreement.

14. Under the applicable Transaction Confirmation, DUG agreed to provide a daily minimum LR Capacity of two MW. In exchange, MP2 agreed to schedule this LR Capacity into the market on a daily basis and pay DUG $11.00 per MW for each hour of the month. DUG also agreed to the pricing structure and terms shown in the Transaction Confirmation.

15. In exchange for DUG's participation in this program (including DUG's promise and obligation to reduce its load on demand), MP2 has paid DUG more than $430,000.00 dollars over the life of the Services Agreement.

16. Electricity and operating reserves can be provided to the grid by either generating electricity or reducing consumption. To be able to provide its two MW of LR Capacity to the grid, DUG was required to (a) be capable of operating at least two MW, (b) reduce its load by at least two MW when called upon by ERCOT to do so, and (c) restore its load back to at least two MW when directed to do so by ERCOT.

17. In February 2021, due to vastly increased electricity demand for customers across the state of Texas and power generation disruptions, ERCOT issued mandatory load reductions to LRs like DUG to maintain the reliability of the ERCOT grid. The Services Agreement was in effect during this time.

18. Following ERCOT's directive, MP2 promptly notified DUG by electronic signal of the mandatory curtailment of its electricity consumption, which triggered DUG's obligation to reduce its load. DUG complied with this initial instruction by reducing its consumption by two MW. However, when ERCOT issued recall instructions requiring DUG to restore its load to at least two MW within three hours of receipt of the instruction, and despite MP2 promptly notifying DUG of ERCOT's instruction to restore its load, DUG did not restore its load within three hours to comply with ERCOT's instructions. Thus, DUG failed to provide LR Capacity to the grid as it had promised to do so and therefore failed to meet its contractual obligations.

19. Under the terms of the Transaction Confirmation, if DUG failed to meet its LR Capacity obligations, the parties agreed that MP2 would replace DUG's two MW by contracting for replacement LR Capacity from

another counterparty and/or from ERCOT at a fixed price, and charge DUG for the replacement LR Capacity cost.

20. Because DUG failed to meet its LR Capacity obligations, MP2 was forced to replace DUG's obligated LR Capacity. Specifically, MP2 procured replacement LR Capacity due to DUG's failure to meet its obligations at a cost totaling at least $2,410,088.40.

21. Under the Services Agreement, DUG was obligated to pay MP2 $2,410,088.40 for costs MP2 incurred for procuring replacement LR Capacity due to DUG's failure to meet its LR obligations in February 2021. But DUG has failed and refused to pay these costs despite being asked to do so.

## CAUSES OF ACTION

### Count 1: Breach of Contract – Unpaid Replacement LR

22. The foregoing allegations are incorporated herein by reference.

23. The Services Agreement is a valid, enforceable contract.

24. MP2 has fully performed its obligations under the Services Agreement by providing energy management services (in the form of the Demand Service Management Program) to DUG, including paying DUG

the product of $11.00 per MW times two MW for each hour of the month pursuant to the schedule in the applicable Transaction Confirmation.

25. DUG participated in the Demand Side Management Program and was required to be capable of operating at two MW, to reduce its load by two MW when called upon by ERCOT to do so, and to restore its load by two MW when called by ERCOT to do so.

26. DUG materially breached the Services Agreement by failing to restore its load when it was instructed and obligated to do so and by failing to pay for the replacement LR Capacity obtained by MP2 on its behalf in February 2021.

27. MP2 has suffered significant damages because of DUG's breach of the Services Agreement.

**Count 2: Attorneys' Fees**

28. Due to DUG's actions, MP2 has been required to retain the services of the law firm of Haynes Boone, LLP. MP2 has agreed to pay Haynes Boone a reasonable fee for its services necessarily rendered and to be rendered in this action.

29. MP2 is entitled to its reasonable and necessary attorneys' fees and costs. DUG's failure to pay the amount owed within 30 days following

MP2's presentment of its claim renders DUG liable to MP2 for attorneys'

fees under Chapter 38 of the Texas Civil Practice and Remedies Code and

under the parties' agreements.

## PRE-JUDGMENT AND POST JUDGMENT INTEREST

30. MP2 seeks pre-judgment and post judgment interest in connection

with its claims to the fullest extent permitted by law, equity, and the terms

of the parties' agreements.

## CONDITIONS PRECEDENT

31. All conditions precedent to MP2's claims for relief have been

performed or occurred, or have been met, waived, or excused.

## JURY DEMAND

32. MP2 hereby demands a trial by jury on all contested issues of fact

pursuant to Fed. R. Civ. P. 38.

## PRAYER

WHEREFORE, MP2 Energy LLC requests the Court grant it the

following relief:

1. Judgment awarding MP2 all damages it has suffered as a result of

DUG's breach of the Services Agreement;

2. Judgment awarding MP2 all reasonable and necessary attorneys' fees and expenses incurred in this matter under Section 38.001 of the Texas Civil Practices & Remedies Code and the Services Agreement;

3. Judgment awarding MP2 pre-judgment and post-judgment interest in the amount allowed by law;

4. Judgment awarding MP2 all costs of court; and

5. Such other and further relief as is equitable and just, both at law and in equity, as MP2 may show itself justly entitled.

Dated: September 12, 2024                Respectfully submitted,


*/s/ Michael J. Mazzone*
**Michael J. Mazzone**
State Bar No. 13313000
Federal ID No. 4267
HAYNES BOONE, LLP
1221 McKinney, Suite 4000
Houston, Texas 77010
Telephone: (713) 547-2000
Facsimile: (713) 547-2600
*Michael.Mazzone@haynesboone.com*

**Attorney in charge for MP2 Energy LLC**

**Morgan A. Haenchen**
State Bar No. 24106040
Federal ID No. 3240473
**Dallas Jackson**
State Bar No. 24132246
HAYNES BOONE, LLP
1221 McKinney, Suite 4000
Houston, Texas 77010
Telephone: (713) 547-2000
Facsimile: (713) 547-2600
*Morgan.Haenchen@haynesboone.com*
*Dallas.Jackson@haynesboone.com*

**Of counsel for MP2 Energy LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this foregoing document was served on all counsel of record pursuant to the Federal Rules of Civil Procedure on this 11th day of September, 2024.

*/s/ Michael J. Mazzone*
Michael J. Mazzone